IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **JESUS SOTO,** § | | |
| *Plaintiff* § | | |
| § | | |
| -vs- § | EP-18-CV-00021-RFC | |
| § | | |
| **NANCY A. BERRYHILL, ACTING** § | | |
| **COMMISSIONER OF THE SOCIAL** § | | |
| **SECURITY ADMINISTRATION;**[1] § | | |
| *Defendant* § | | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Both parties consented to trial on the merits before a United States Magistrate Judge, and the case was transferred to this Court for trial and entry of judgement pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas. For the reasons set forth below, this Court orders that the Commissioner's decision be **REVERSED** and **REMANDED.**

## PROCEDURAL HISTORY

On March 17, 2015, Plaintiff filed his application for DIB alleging a disability onset date of March 12, 2015. (R:160–66). The Agency denied his claim on June 29, 2015, and again upon reconsideration on November 5, 2015. (R:72–75, 78–80). On March 9, 2017, a hearing was held

---

[1] On March 6, 2018, the Government Accountability Office determined that Nancy Berryhill's continued service as Acting Commissioner of Social Security violated the Federal Vacancies Reform Act of 1998. GOVERNMENT ACCOUNTABILITY OFFICE, *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998—Commissioner, Social Security Administration* (2018), https://www.gao.gov/assets/700/690502.pdf. Accordingly, this position is now vacant.

1

before an Administrative Law Judge ("ALJ"). (R:32–50). The ALJ issued an unfavorable decision on June 9, 2017, denying benefits. (R:15–27). The Appeals Council subsequently denied Plaintiff's request for review on November 30, 2017. (R:1–3).

## ISSUE

Plaintiff presents the following issue for review:

1. Whether the ALJ erred in her evaluation of the treating physician's opinion. (Doc. 19).

## DISCUSSION

### A. Standard of Review

The Court's review is limited to determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is more than a scintilla, but can be less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly distracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial evidence standard, a

court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Harywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgement "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shahala*, 1 F.3d 357, 360 (5th Cir. 1993).

### B. Evaluation Process

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairments that is severe; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairments prevents claimant from preforming past relevant work; and (5) whether the impairments prevents the claimant from doing any other work. 20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof at the first four steps. Once met, the burden will then shift to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

### C. ALJ Hearing Decision

At the first step, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 12, 2015. (R:17). At the second step, the ALJ found that Plaintiff has severe depression. (*Id.*). Further, the ALJ found that Plaintiff has non-severe hypertension, hyperlipidemia, hypothyroidism, and stage three chronic kidney disease. *(Id.)*. At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R:18).

Before moving to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of work at a medium exertional level. (R:20). Specifically, the ALJ found that Plaintiff is able to perform work that requires lifting or carrying up to 25 pounds frequently or up to 50 pounds occasionally, sit for up to six hours of an eight-hours workday, and stand and/or walk for up to six hours in an eight-hour work day but with the following nonexertional limitations: Plaintiff can occasionally stoop, crouch, or crawl. (*Id.*). Further, Plaintiff can understand, remember, and carry out simple instructions and perform routine tasks. (*Id.*). Finally, Plaintiff can make simple work related decisions; however, Plaintiff cannot have contact with the general public. (*Id.*).

At the fourth step, the ALJ found that Plaintiff was able to perform his past relevant work as a Sewing Machine Operator. (R:24). In the alternative, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. (R:25). Consequently, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 12, 2015, through the date of the ALJ's decision. (R:26)

### D. Analysis

Plaintiff contends that the ALJ failed to properly consider the medical opinions from Dr. Randall Rattan and Dr. Nicolas Baida Fragoso. (Doc. 19:3–5). Specifically, Plaintiff contends the ALJ erred by failing to discuss the six factors required by 20 C.F.R. § 404.1527(c)(2), as no examining or treating physician opinion contradicted the opinions of Dr. Fragoso and Dr. Rattan. (Doc. 19:4).

Ordinarily, a treating physician's opinion should be given controlling weight if it is: (1) well-supported by medically acceptable clinical and laboratory diagnostics techniques; and (2) not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Thomas v. Astrue*, 227 F. App'x 350, 353 (5th Cir. 2008). However, a treating physician's opinions are not conclusive. *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005). The ALJ may assign little or no weight to the opinion of any physician for good cause. *Newton,* 209 F.3d at 455–56. Good cause exists where statements are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostics techniques, or otherwise unsupported by evidence." *Perez,* 415 F.3d at 466 (emphasis added).

Absent reliable medical evidence from a treating or examining physician controverting the claimant's treatment specialist, an ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis under the applicable federal regulation. *Newton*, F.2d at 453. Specifically, the regulation requires the consideration of:

1. Length of the treatment relationship and the frequency of examination;
2. Nature and extent of the treatment relationship;
3. Supportability;
4. Consistency;
5. Specialization; and
6. Other factors that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(c)(2)).[2] Consideration of these factors is only necessary absent controverting reliable medical evidence from a treating or examining physician. *See Bullock v. Astrue*, 277 F. App'x 325, 329 (5th Cir. 2007) (per curiam). Here, only two medical sources opined on the disabling nature of Plaintiff's mental impairments, Dr. Rattan and Dr. Fragoso.

### a. Dr. Rattan

The Commissioner contends that the ALJ correctly weighed Dr. Rattan's opinion. (Doc. 20:5). Specifically, Plaintiff's GAF score, inconsistent mental statements, and failure to list depression on his initial application provided adequate grounds for discounting Dr. Rattan's opinion. (Doc. 20:5–6).

Plaintiff visited Dr. Rattan on October 10, 2015, for a mental status examination. (R:294). Dr. Rattan opined that Plaintiff appears to be capable of carrying out basic instructions, but would have difficulty exhibiting contextually appropriate behavior and would have difficulty maintaining consistent employment from a mental health standpoint. (R:298). The ALJ gave Dr. Rattan's opinion regarding Plaintiff's ability to maintain consistent work little weight and gave Dr. Rattan's opinion regarding Plaintiff's ability to carry out basic instructions great weight. (R:24). In reaching her decision, the ALJ cited Plaintiff's GAF score, inconsistent mental statements, and failure to list depression on his initial application. (Doc. 20:5).

The ALJ erred by failing to conduct the necessary analysis under 20 C.F.R. § 404.1527(c)(2). Here, no other treating physician contradicted Dr. Rattan, and the ALJ cannot play doctor by picking and choosing her supporting evidence. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (An ALJ must be careful not to succumb to the temptation to play doctor and making their own independent medical assessments); *Salmond v. Berryhill*, 892 F. 3d

---

[2] Plaintiff's claim was filed prior to March 27, 2017, therefore the former rules for evaluating medical source opinions apply. *See* 20 C.F.R. § 404.1527.

812, 818 (5th Cir. 2018) (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000). While some of Dr. Rattan's evidence may be inconsistent with Dr. Rattan's overall conclusion, Dr. Rattan, based on his own medical expertise, concluded that Plaintiff had significant restrictions that will affect his employment. Because this is not a case where the ALJ had to weigh contradicting medical opinions from another examining physician, the ALJ must give a detailed analysis under 20 C.F.R. § 404.1527(c)(2). *See Bullock v. Astrue*, 277 F. App'x 325, 329 (5th Cir. 2007) (per curiam).

### b. Dr. Fragoso

Next, the Commissioner contends that Dr. Fragoso's medical opinion is a conclusory checklist and therefore the ALJ had good cause for rejecting his opinion, and Dr. Rattan's opinion contradicts Dr. Fragoso's opinion. (Doc 20:6–8).

Dr. Fragoso examined Plaintiff multiple times in 2016. (R:417–20, 463–80). In those examinations, Dr. Fragoso assessed that Plaintiff has major depressive disorder. ((*Id*.). The record reflects that Plaintiff's major depressive disorder ranged from moderate to severe, to severe with mood-congruent psychotic features. (R: 375, 480, 471).

On March 6, 2017, Dr. Fragoso completed a medical source statement ("MSS"). (R:520–21). In the MSS, Dr. Fragoso opined that Plaintiff's impairments affected his ability to understand, remember, and carry out instructions. (R:520). Specifically, slight limitations to understand and remember short, simple instructions; slight limitations to carry out short, simple instructions; marked limitations to understand, remember detailed instructions; marked limitations to carry out detailed instructions; and moderate limitations to make judgments on simple work-related decisions. (*Id*.). Dr. Fragoso indicated that these findings were supported by

Plaintiff's poor concentration, difficulty retaining information, lack of confidence, and disabling anxiety. (*Id.*).

Further, Dr. Fragoso opined that Plaintiffs impairments affected his ability to respond appropriately to supervision, coworkers, and work pressure. (R:521). Plaintiff had marked limitations to interact appropriately with the public; marked limitations to interact appropriately with supervisors; marked limitations to interact appropriately with coworkers; marked limitations to respond appropriately to work pressures in a usual work setting; and mark limitations to respond appropriately to changes in a routine work setting. (*Id.*). Dr. Fragoso indicated that these findings were supported by Plaintiff's disabling agoraphobia, feelings of worthlessness, low self-esteem, and an inability to tolerate criticism. (*Id.*).

The ALJ gave Dr. Fragoso's opinion that Plaintiff has only slight limitation in his ability to understand, remember, and carry out simple instructions great weight. (R:24). The ALJ indicated that the rest of Dr. Fragoso's findings in the MSS were inconsistent with the overall record. (*Id.*).

The ALJ did not have good cause to disregard Dr. Fragoso's opinion. As mentioned earlier, Dr. Fragoso completed several psychiatric examinations. In those examinations, based on Dr. Fragoso's numerous personal observations and medical expertise, Dr. Fragoso assessed that Plaintiff has major depressive disorder with multiple marked limitations. (R:417–20, 463–80). Thus, while Dr. Fragoso's MSS may be brief, his medical findings in the MSS are supported by the record and are not simply a conclusory checklist.

Further, Dr. Rattan's opinion does not contradict Dr. Fragoso's opinion. Dr. Fragoso and Dr. Rattan both concluded that Plaintiff had significant restrictions that would hamper his ability to maintain employment. While some parts of Dr. Rattan's opinion may support the ALJ's

decision, again, the ALJ cannot play doctor by picking and choosing her supporting evidence. As the Fifth Circuit recently indicated, the ALJ should not substitute his or her lay opinion for the medical opinion of experts, especially in a case involving a mental disability. *Salmond v. Berryhill*, 892 F.2d 812, 818 (5th Cir. June 18, 2018) (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000)). Because this is not a case where the ALJ had to weigh competing medical opinions from different treating physicians, the ALJ erred by failing to conduct an analysis under 20 C.F.R. § 404.1527.

## **CONCLUSION**

The ALJ's findings regarding the weight given to Plaintiff's treating sources are not supported by substantial evidence. Thus, the Court **HEREBY ORDERS** that the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**SIGNED** this 23rd day of July, 2018.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE